1

2

3

4

5

6

7

8                                IN THE UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT M. JOHNSON,

11                    Plaintiff,                        No. CIV S-06-0821 MCE EFB P

12           vs.

13   ARNOLD SWARTZENEGGER,
     et al.,
14

15                    Defendants.                       FINDINGS AND RECOMMENDATIONS
     _____/

16           Plaintiff is a prisoner without counsel suing for alleged civil rights violations.  *See* 42

17   U.S.C. § 1983.  This action proceeds on plaintiff's April 17, 2006, original verified complaint, in

18   which he alleges that defendants were deliberately indifferent to his medical needs in violation of

19   the Eighth Amendment to the United States Constitution.  Defendants filed a motion for

20   summary judgment on March 14, 2007.

21   **I.      Facts**

22           Plaintiff is an inmate currently serving his sentence at California State Prison, Solano.

23   Plaintiff transferred from California State Prison, Sacramento to CSP Solano on or about April

24   24, 2005.  Verified Complaint ("Compl."),  at ¶ 3.  He was diagnosed with hepatitis C, cirrhosis

25   and end-stage liver disease prior to his transfer to CSP Solano.  Defs.' Mot. for Summ. J.,

26   Attach. 7, Decl. of Alvaro Traquina, ("Traquina Decl."), ¶¶ 6.  He takes a prescription

                                                    1

1  medication named Lactulose because of his diagnoses.  Compl., at ¶4; Traquina Decl., at ¶¶ 6-8;

2  Defs.' Mot. for Summ. J., Attach. 6, Decl. of Folashade Naku ("Naku Decl."), at ¶ 2.  Lactulose,

3  a medication commonly prescribed for people with constipation, also is prescribed to people who

4  have cirrhosis.  Naku Decl., at ¶ 7.  Lactulose may be given to prevent intestinal bacteria from

5  creating ammonia, and as a laxative to evacuate blood from the intestines.  *Id.*

6       Defendant Alma Hughey is a compliance coordinator at CSP Solano whose only

7  relationship to the pharmacy at CSP Solano is that she signed time cards for employees of CSP

8  Solano.  Defs.' Mot. for Summ. J., Attach. 5, Decl. of Alma Hughey ("Hughey Decl."), ¶¶ 1, 3.

9  She had no authority to order medication, to distribute medication, nor to assist in plaintiff's

10  medical care.  *Id.*, at ¶ 4.  She was not aware of any medical diagnosis concerning plaintiff and

11  did not know, nor did she have reason to know of, the medications that were prescribed to

12  plaintiff.  *Id.*, at ¶5.  She did not deliberately withhold medication from plaintiff nor hinder his

13  ability to obtain medication.  *Id.*, at ¶6.

14       Chief Medical Officer Alvaro Traquina, MD, did not participate in plaintiff's medical

15  care.  Traquina Decl., at ¶ 2.  He did receive a letter from the plaintiff's sister regarding

16  plaintiff's prescription.  Traquina Decl., at ¶ 3.  In response to this letter, Dr. Traquina took

17  reasonable steps to ensure that plaintiff's medical needs were met.  Traquina Decl., at ¶¶ 3, 4.

18  He also granted an inmate appeal filed by plaintiff.  Traquina Decl., at ¶¶ 4-5.  In this inmate

19  appeal, plaintiff stated that he received his Lactulose prescription as ordered and without delay

20  from June 2005 through August 25, 2005 (the date that he was interviewed for his intermediate

21  appeal).  Traquina Decl., at ¶ 5; Naku Decl., at ¶ 4.  Dr. Traquina states that he did not

22  intentionally or recklessly disregard plaintiff's medical condition and in fact did all that he could

23  to ensure that plaintiff's medical needs were met.  Traquina Decl., at ¶¶ 8-9.

24       Pharmacist Folashade Naku was not involved in plaintiff's medical or pharmaceutical

25  care when plaintiff was first transferred to this CSP Solano.  Naku Decl., at ¶ 2.  She is a

26  pharmacist, not a treating physician.  Naku Decl., at ¶¶ 1-2.  Dr. Naku was not aware of

1   plaintiff's medical conditions or prescriptions until June 2005, when she interviewed plaintiff.

2   Naku Decl., at ¶ 2.  She was not the Pharmacist in charge at CSP Solano and was not aware of

3   every patient's medical needs.  *Id*.  When Naku became aware of his condition, she met with

4   plaintiff and immediately began dispensing the proper prescribed amount of medication to the

5   plaintiff.  Naku Decl., at ¶ 3.

6          Plaintiff alleges that the defendants in this action consciously disregarded health risks to

7   him by deliberately withholding Lactulose Solution.  Compl., at 3.  He further claims that the

8   lack of Lactulose allegedly caused ammonia poisoning that, three months later, caused him to

9   suffer hepatic encephalopathy, and ultimately lose consciousness and fall into a coma.  *Id.*

10  Defendants state that they did not deliberately withhold medication from plaintiff.  Traquina

11  Decl., at ¶¶ 8-9; Naku Decl., at ¶ 8;  Hughey Decl., at ¶ 6.  Defendants claim that none of them

12  was aware of the plaintiff's diagnoses, prescriptions, or medical history when he first transferred

13  to CSP Solano on April 25, 2005.  Traquina Decl., at ¶ 2; Naku Decl., at ¶ 2; Hughey Decl., at

14  ¶ 2, 4-6.  Plaintiff filed a grievance on May 9, 2005, stating that a Lactulose refill request he

15  submitted four days prior had not been processed.  Compl., Ex. A.  The following day, his

16  grievance was granted and his prescription was refilled.  *Id.*  At the second level of review,

17  defendant Traquina found that, during an interview with plaintiff, conducted by defendant Naku,

18  plaintiff "acknowledged that [he had] been receiving [his] medication, as ordered and without

19  delay, since June 2005."  Compl., Ex. B.

20         Defendant Naku also interviewed plaintiff on August 25, 2005, for his inmate appeal that

21  preceded this lawsuit.  Naku Decl., at ¶ 4.  In this interview, plaintiff admitted that he had

22  received his medication "like clockwork" since the June 2005 interview between plaintiff and

23  defendant Naku.  Naku Decl., at ¶ 4; Compl., Ex. A.  Following this interview, defendant Naku

24  future-dated plaintiff's prescriptions so that the medication would arrive regularly.  Naku Decl.,

25  at ¶ 5. Defendant Naku also ordered larger bottles of the medication in question so that plaintiff

26  would receive his medication in larger doses, which would in turn reduce the number of trips to

1   the pharmacy that the plaintiff made during the course of a month.  Naku Decl., at ¶ 5.

2   Defendant Naku's involvement with the plaintiff's medical care did not include ordering

3   medication from sources outside of the prison.  Naku Decl., at ¶ 2.  She was unaware of any

4   problems that the plaintiff encountered in obtaining his medication prior to October 26, 2005,

5   when plaintiff apparently slipped into a coma.  Naku Decl., at ¶¶ 6, 8.  In fact, defendant Naku

6   recalls that plaintiff returned unopened bottles of Lactulose to the pharmacy following her

7   interview with plaintiff in August 2005.  Naku Decl., at ¶ 6.  Defendant Naku asserts that she did

8   not intentionally or recklessly deprive or deny plaintiff medication.  Naku Decl., at ¶ 8.  Plaintiff

9   did not file any inmate 602 complaints or otherwise complain to any of the doctors herein (or to

10  anyone else) that his medication was not being timely delivered at any time from June 2005 to

11  October 29, 2005 (the date that exhibits in his complaint suggest he slipped into a coma).

12  Moreover, Exhibit C to plaintiff's complaint (his California Government Tort Claim), dated

13  October 19, 2005, does not allege that plaintiff failed to receive his prescribed amount of

14  Lactulose at any time after June, 2005.

15          Lactulose is most commonly prescribed to people diagnosed with constipation.  Naku

16  Decl., at ¶ 7; Traquina Decl., at ¶ 7.  Lactulose is also prescribed to people diagnosed with

17  cirrhosis, hepatitis C, and/or end-stage liver disease.  Naku Decl., at ¶ 7; Traquina Decl., at ¶ 7.

18  Cirrhosis, hepatitis C, and end-stage liver disease all progress to the point where, despite

19  medication and good medical care, persons diagnosed with these diseases suffer deteriorating

20  health consequences.  Traquina Decl., at ¶ 6.  These three diseases naturally cause persons

21  diagnosed with any or all said diseases to experience altered states of consciousness, coma, and

22  eventually, organ failure, even with regular doses of Lactulose or other medications. Traquina

23  Decl.,  at ¶ 6.  Plaintiff's pre-existing diagnoses of cirrhosis, hepatitis C, and/or end-stage liver

24  disease naturally progressed to the point where he suffered the injuries set forth in his complaint.

25  *Id*.  Defendant Traquina alleges that none of the alleged acts and omissions set forth in plaintiff's

26  complaint actually caused any of his injuries.  Traquina Decl., at ¶ 6.

## II.    Summary Judgment Standards

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts.  *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added).  Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

1   bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236,

2   239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

3         Thus, to overcome summary judgement an opposing party must show a dispute that is

4   both genuine, and involving a fact that makes a difference in the outcome.[1]  Two steps are

5   necessary.  First, according to the substantive law, the court must determine what facts are

6   material.  Second, in light of the appropriate standard of proof, the court must determine whether

7   material factual disputes require resolution at trial.  *Id.,* at 248.

8         When the opposing party has the burden of proof on a dispositive issue at trial, the

9   moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v.*

10  *National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  The moving party need only point to matters

11  which demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477

12  U.S. 317, 323-24 (1986).

13        If the moving party meets its burden, the burden shifts to the opposing party to establish

14  genuine material factual issues.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.[2]  The opposing

15  party must demonstrate that the disputed facts are material, i.e., facts that might affect the

16  outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc.*

17  *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are

18  genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*,

19  809 F.2d at 631.  There can be no genuine issue as to any material fact where there is a complete

20  failure of proof as to an essential element of the nonmoving party's case because all other facts are

21

22        [1] On August 2, 2006, the court informed plaintiff of the requirements for opposing a
    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland,* 154

23  F.3d 952, 957 (9th Cir.1998) (en banc), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144
    L.Ed.2d 793 (1999), and *Klingele v. Eikenberry,* 849 F.2d 409, 411-12 (9th Cir.1988).

24        [2] The nonmoving party with the burden of proof  "must establish each element of his
    claim with significant probative evidence tending to support the complaint." *Barnett v. Centoni*,

25  31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted).  A complete failure of proof on an
    essential element of the nonmoving party's case renders all other facts immaterial, and entitles

26  the moving party to summary judgment. *Celotex*, 477 U.S. at 322.

1   thereby rendered immaterial.  *Celotex*, 477 U.S. at 323.  The opposing party may not rest upon the

2   pleadings' mere allegations or denials, but must present evidence of specific disputed facts.  *See*

3   *Anderson*, 477 U.S. at 248.[3]  Conclusory statements cannot defeat a properly supported summary

4   judgment motion.  *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

5          The court does not determine witness credibility.  It believes the opposing party's

6   evidence, and draws inferences most favorably for the opposing party.  *See Anderson*, 477 U.S. at

7   249, 255.  Inferences, however, are not drawn out of "thin air," and the proponent must produce

8   evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v.*

9   *American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*,

10  477 U.S. at 322).

11         If reasonable minds could differ on material facts at issue, summary judgment is

12  inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other

13  hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the

14  nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation

15  omitted).  In that case, the court must grant summary judgment.

16         With these standards in mind, it is important to note that plaintiff bears the burden of

17  proof at trial over the issue raised on this motion, i.e., whether the defendant acted with deliberate

18  indifference to the plaintiff's safety.  Equally critical is that "deliberate indifference" is an

19  essential element of plaintiff's cause of action.  Therefore, to withstand defendant's motion,

20  plaintiff may not rest on the mere allegations or denials of his pleadings.  He must demonstrate a

21  genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he

22  must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the

23  evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

24

_____

25         [3]  A verified complaint may be used as an affidavit in opposition to the motion.
    *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196,
26  197-98 (9th Cir. 1987) (per curiam).

**III.    Discussion**

Plaintiff claims that he suffered hepatic encephalopathy and coma as a result of defendants' refusal to provide him with Lactulose.  A prisoner who claims his Eighth Amendment guarantee against cruel and unusual punishment has been violated by inadequate medical care must allege that on a specific day an identified state actor with individual responsibility for obtaining or providing medical care knew the prisoner faced substantial risk of serious harm but deliberately disregarded the risk by failing to take reasonable measures resulting in avoidable persistent severe pain or avoidable substantial personal injury.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To state a claim defendants provided constitutionally inadequate medical care, plaintiff must allege acts or omissions evidencing identified defendants knew of and disregarded plaintiff's serious medical needs.  *Estelle*, 429 U.S. at 106; *Farmer*,  511 U.S. at 837.  Neither defendants' negligence nor plaintiff's general disagreement with the treatment he received suffices to state a claim.  *Estelle*, 429 U.S. at 106; *Hutchinson v. United States*,  838 F.2d 390, 394 (9th Cir. 1988); *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996).

A medical need is serious if the failure to treat the prisoner's condition could result in further significant injury or the " 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  When, as here, the prisoner seeks only damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988).  *Leer* explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages." *Id*.

When a plaintiff seeks to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must

1  be more refined.  The court must focus on whether the individual defendant was in a position to

2  take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference . . . .

3  [I]n order to prevail and recover damages against any of the named prison officials, the plaintiff

4  in this case must prove (1) that the specific prison official, in acting or failing to act, was

5  deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference

6  *was the actual and proximate cause of the deprivation* of plaintiff's eighth amendment right to be

7  free from cruel and unusual punishment.  *Id*. at 633-34 (emphasis added).

8         The court finds that plaintiff has failed to raise a triable issue of fact as to whether

9  defendants' alleged indifference was the "actual and proximate cause" of his suffering from

10  hepatic encephalopathy and lapsing into a coma.  Plaintiff has not submitted any competent

11  evidence showing that the interference with his prescribed course of Lactulose almost five months

12  prior to his hospitalization was the cause of the deterioration of his condition.  Nor has he shown

13  that the interruption in his course of medication was due to deliberate indifference on the part of

14  any defendant.  Instead, the evidence shows that the problems plaintiff encountered in receiving

15  the correct amount of Lactulose following his transfer to CSP Solano were immediately addressed

16  and corrected upon his filing of a grievance, and that there was no interruption of his Lactulose

17  refills from June 2005 to October 29, 2005.  Defendants also submit evidence that plaintiff's

18  condition would have worsened, even with an uninterrupted course of treatment with Lactulose.

19         Because plaintiff has failed to raise a genuine dispute over a material issue of fact

20  concerning the requisite causal connection between defendants' actions or inactions and the

21  alleged Eighth Amendment violation, summary judgment is appropriate.  *See Id.* at 634 (affirming

22  summary judgment in favor of defendants; no causal connection between prison officials' actions

23  and assault on inmates); *see also Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.1990).

24  ////

25  ////

26  ////

Accordingly, it is hereby RECOMMENDED that:

1.  Defendants' March 14, 2007, motion for summary judgment be granted;

2.  Judgment be entered in their favor; and

3.  The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 14, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE